No. 86,509

STATE OF KANSAS, *Appellee*, v. RUTH HAMMAN, *Appellant*.

(41 P.3d 809)

Opinion filed March 8, 2002.

*Steven L. Davis*, of Emporia, argued the cause and was on the brief for appellant.

*R. Clark Allemang, II*, assistant county attorney, argued the cause, and *Marcus Goodman*, county attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Ruth Hamman appeals from the district court's denial of her motion to suppress evidence seized and obtained during a traffic stop and her detention and subsequent convictions of driving under the influence of alcohol and transporting an open container. The case was transferred from the Court of Appeals pursuant to K.S.A. 20-3018(c).

The issue is whether the stopping and detaining of Hamman in Lyon County by a Coffey County deputy sheriff was illegal.

The trial court entertained Hamman's motion to suppress while hearing the evidence in the case. Coffey County Deputy Sheriff Eric Smith testified in the Lyon County trial court about the circumstances in which he stopped Hamman.

On June 12, 2000, Deputy Smith was called to assist a Lyon County deputy. There were juveniles with alcohol at the boat ramp

on the east side of Hartford. The boat ramp is on the line between Coffey and Lyon Counties. The juveniles were on the Coffey County side.

In order to get to the boat ramp, Deputy Smith drove what he called the "main thoroughfare" to Hartford from Coffey County into Lyon County and back again into Coffey County. The "main thoroughfare" is a paved road, which is called Angus Road, that generally follows the north/south border between Coffey and Lyon Counties. For some distance, Angus Road is in Lyon County.

After completing the call to the boat ramp, Deputy Smith drove back the way he had come. While in Lyon County, Smith noticed a Plymouth Neon ahead of him that was going approximately 40 miles per hour. Deputy Smith was traveling approximately 55 miles per hour, and he slowed to keep from getting too close to the Neon. The road was generally straight and had lane markings. Smith observed the Neon going to the right side of the road and then veering back toward the center line.

Due to oncoming traffic, Smith was not able to pass the Neon right away. As oncoming traffic approached the Neon, it moved to the right side of the lane. As oncoming traffic cleared, the Neon veered back toward the center line. He observed the Neon going from side to side in its lane two or three times. From his training and experience, Smith recognized that driving pattern as an indication that the driver might be under the influence of alcohol. Due to his safety concerns, Smith decided to follow the vehicle.

Within a short time, the driver of the Neon turned on the right turn signal and turned off the pavement onto a gravel road. Smith observed the Neon go off to the left side of the gravel road and the driver "struggle slightly" with the steering wheel to get the car back on the right side of the gravel road. Back on the right side of the road, the Neon slowed almost to a stop before proceeding. Then Smith observed the Neon being driven very slowly and on the far right side, not in the ditch, but right alongside it.

Smith decided that for the sake of safety he should stop the vehicle. Smith asked his dispatcher if there was a Lyon County deputy in the area. He asked his dispatcher to let Lyon County know that he needed a Lyon County deputy to come to his location.

Smith was advised that there was a Lyon County deputy in the area.

Smith turned on his emergency lights, and the Neon stopped. Before he got out of his patrol car, Smith was advised that a Lyon County deputy was en route. Smith got out of his patrol car and approached the Neon. The driver of the Neon had very watery eyes, she moved sluggishly, and she smelled of alcoholic beverage. She produced her driver's license.

Smith described to Hamman what he had observed and told her that he stopped her on account of the way she was driving. He advised her that he was a Coffey County deputy, that they were in Lyon County, and that they would wait for a Lyon County deputy to arrive and investigate the circumstances. Hamman remained in her automobile.

Deputy Miller, the Lyon County deputy who had been at the Hartford boat ramp a short time earlier, came to where Smith had stopped the Neon. Smith stayed while Miller investigated the offense. Hamman consented to a preliminary breath test, and she was placed under arrest by the Lyon County deputy. With Hamman's consent, the Lyon County deputy searched the Neon and found an open can of beer in the armrest console.

On the motion to suppress, the trial court made the following ruling on the record:

"I do find that this is an officer who has been trained in alcohol—detection of alcohol impaired drivers. He has been to the Kansas Law Enforcement Training Center as well as the KDOT training class for 24 hours on the arrest and detection of alcohol impaired drivers. So he has the foundation to determine what are alcohol influence indicators. In this case he did testify that he saw the defendant, I think he used the term veer between the lines, instead of weave but go back and forth two or three time between the lines. He also noticed the slow speed of about 40 m.p.h. on the first county road and then about 10 to 15 m.p.h. on the second county road. He also observed, probably more telling was the wide, he described it as a wide turn onto the county road and then hugging the ditch on the second county road that she was traveling on. All of these things are, of course, legal activities or at least possible legal activities but they do add up to an alcohol indicator for this Court or it led the officer to believe, and in fact, he did testify, that he believed that he had probable cause that he had an alcohol impaired driver at this point because the driving that he observed and so as a police officer he would have been well within his—it would have been a proper car stop. The only

question is, well, he was not responding to a Lyon County request so what jurisdiction does a person, as an individual then have under [*State v. Miller*, 257 Kan. 844, 896 P.2d 1069 (1995),] to make an arrest or the intention in this case and that's governed by K.S.A. 22-2403, arrest by a private person and it does, under that statute, allow a person to make an arrest for any crime other than a traffic infraction. This, of course, is not a traffic infraction, it is a traffic misdemeanor, has been or is being committed by the arrested person in the view of the person making the arrest. Well, this officer believed that he had probable cause that this person was committing the crime of DUI in some form so I do believe that he did have that probable cause. I believe that this act was—I don't know if I should characterize it as an arrest or a detention. I think that once somebody is stopped by a policeman and the lights are flashing and they are told not to leave, that probably constitutes an arrest or just real close to it. I also know the law and K.S.A. 22-2406 anticipates those cases when the officer has probable cause to stop the vehicle and then subsequent determination leads to believe that they no longer have probable cause and they can release the individual and that is what could have happened here if that evidence would have gone that way so I do believe that based upon the facts, especially the fact that in light of the belief that there was a person, DUI, driving the vehicle, it is certainly a serious safety concern. I believe it was probable cause to stop if he was a law enforcement officer under K.S.A. 22-2403 that probable cause would also allow a private person to make that arrest having observed those facts at that time. So based upon those findings the Court is of the opinion that the Motion to Suppress as filed by the defendant in this case, should be denied."

In summary, the trial court concluded that it was proper for Smith, as a private person, to arrest Hamman. The trial court reasoned as follows: Smith was trained and experienced in recognizing indicators of driving under the influence. Smith observed indicators of driving under the influence in Hamman's driving. Smith, therefore, had probable cause to stop Hamman. DUI is a traffic misdemeanor, which is subject to a citizen's arrest. See K.S.A. 2001 Supp. 22-2403(2). Because Smith had probable cause to stop Hamman, he could do so as a private person regardless of the Lyon County location pursuant to 22-2403(2) and *State v. Miller*, 257 Kan. 844, 896 P.2d 1069 (1995).

K.S.A. 2001 Supp. 22-2401a(1) provides: "[S]heriffs and their deputies may exercise their powers as law enforcement officers: (a) Anywhere within their county; and (b) in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person." The trial

court determined, and the State concedes, that 22-2401a is not applicable and did not authorize Deputy Smith to arrest Hamman in Lyon County.

With regard to a citizen's arrest, Hamman argues that Deputy Smith, as a private person, did not have authority to stop her pursuant to K.S.A. 2001 Supp. 22-2403, which provides:

"A person who is not a law enforcement officer may arrest another person when:

(1) A felony has been or is being committed and the person making the arrest has probable cause to believe that the arrested person is guilty thereof; or

(2) any crime, other than a traffic infraction or a cigarette or tobacco infraction, has been or is being committed by the arrested person in the view of the person making the arrest."

Subsection (1) does not apply because the offenses Hamman was charged with were not felonies.

Hamman contends that subsection (2) does not apply because she did not commit a crime in Deputy Smith's view. She relies on *Miller* for support of her construction of K.S.A. 2001 Supp. 22-2403(2).

In *Miller*, the court considered whether an Osage City police officer's arresting the defendant at his home in Lyndon, without a request for assistance or fresh pursuit, affected the validity of the arrest. Because the Osage City police officer was acting outside his jurisdiction, as set out in 22-2401a, the court considered the validity of the arrest under 22-2403. The court stated: "As recognized by this court in [*State v.*] *Shienle*, 218 Kan. [637], 640-41, [545 P.2d 1129 (1976)], the general rule is that a law enforcement officer who makes a warrantless arrest outside the territorial limits of the officer's jurisdiction must be treated as a private person." 257 Kan. at 851.

Thus, in determining whether Deputy Smith's stop of Hamman in Lyon County was authorized by the citizen's arrest statute, K.S.A. 2001 Supp. 22-2403(2), the court need look no further than the question of probable cause. The trial court found that there were indicators of driving under the influence in Hamman's driving that were readily recognizable to Smith. According to the trial court, on the basis of the driving patterns observed by Smith, he

had probable cause to believe that Hamman was committing the offense of driving under the influence.

On the probable cause issue, Hamman makes two points in her brief. First, Hamman asserts that Deputy Smith admitted that when he stopped her he did not have probable cause to arrest her and that he observed no violation of the law. The testimony Hamman refers to was given by Smith in response to questions about what further steps he would have taken before arresting Hamman if he had stopped her in Coffey County. Smith said that if he had been acting as an arresting officer in Coffey County, he would have continued his observations after stopping her and would have conducted some roadside testing, such as the preliminary breath test. Smith was first asked:

"Q. Now it's my understanding that at the time you detained her you didn't place her under arrest because you didn't feel like you had authority to do so?
"A. Correct."

Then the following questions were asked and answered:

"Q. Did you also testify on direct examination that the person possibly was driving under the influence?
"A. Yes, I did.
"Q. Officer, had this been a stop within your jurisdiction, would you have proceeded to obtain additional information in order to determine if you had probable cause to arrest this person?
"A. No, I would not.
"Q. You would have just arrested her?
"A. I'm sorry. At which point are you talking about?
"Q. Had you made this stop in Coffey County.
"A. Yes.
"Q. Would you have requested or obtained additional information, such as observations, testing, PBT to ascertain if you had probable cause to make an arrest?
"A. I understand. Yes I would have.
"Q. But at that point, but at that point you didn't have that?
"A. No, I did not."

Then, on redirect, Smith testified:

"Q. At that point she was not under arrest, was she?
"A. No she was not.
"Q. Have you, in your experience as a law enforcement officer in Coffey County and/or the City of Burlington made an investigatory detention under the conditions that you've described you saw in this case?

"A. Yes I have."

Smith's testimony was given in reference to making a formal arrest of Hamman, which he did not do, but left that to the Lyon County deputy. The trial court found that Hamman's driving patterns provided Smith with probable cause to arrest her pursuant to the citizen's arrest statute, K.S.A. 2001 Supp. 22-2403(2). That Smith continued his observations once he approached the car and would have conducted some roadside testing in other circumstances does not mean that he did not have probable cause. Writing about warrantless arrests, this court has defined probable cause as "the reasonable belief that a specific crime has been committed and that the defendant committed the crime. It does not require evidence of each element of the crime or evidence to the degree necessary to prove guilt beyond a reasonable doubt." *Key v. Hein, Ebert & Weir, Chtd.*, 265 Kan. 124, Syl. ¶ 2, 960 P.2d 746 (1998). In the present case, Smith had a reasonable belief that Hamman was driving under the influence at the time he turned on his emergency lights to stop her. Once he stopped her and observed her and smelled alcoholic beverage, he had a reasonable belief that she should be detained until a Lyon County deputy arrived.

Second, Hamman contends that the trial court ignored precedent, specifically *Miller*. The parties in *Miller* stipulated that the Osage City police officers knew that a burglary and theft had occurred in Osage City. A third person, who was not involved in the burglary and theft, told an arresting officer that Miller might have been involved. On the basis of that information, the Osage City police officers went to Miller's house in Lyndon in the early morning hours and arrested him. The magistrate judge dismissed the theft and burglary charges against Miller; on stipulated facts, the district court affirmed. This court determined that the stipulation did not contain probable cause to support a citizen's arrest. 257 Kan. at 852. This court remanded, however, directing the trial court to consider whether the arrest may have been valid, not as a citizen's arrest, but as an arrest by law enforcement officers in exigent circumstances, pursuant to 22-2401a. 257 Kan. at 852-53.

*Miller* is entirely distinguishable from the present case on the facts. The basis for the officers' extraterritorial arrest of Miller was

an informant's statement that Miller might have been involved in a burglary and theft. The basis for Smith's arrest of Hamman was his personal observation of her driving.

Although not raised by the State, there is an additional justification for Deputy Smith stopping Hamman. In *State v. Vistuba*, 251 Kan. 821, 840 P.2d 511 (1992), the deputy sheriff stopped Vistuba after observing him driving in much the same way as Hamman did in the present case. The deputy testified that he had no reason to believe Vistuba committed or was about to commit any crime or traffic violation. He stopped Vistuba because he believed Vistuba was falling asleep. The deputy proceeded to arrest Vistuba for DUI. We upheld the arrest on appeal, holding that "[a] civil or criminal infraction is not always essential to justify a vehicle stop. Safety reasons alone may justify the stop if the safety reasons are based upon specific and articulable facts." 251 Kan. 821, Syl. ¶ 1. And further, such a stop does not violate either the 14th Amendment to the United States Constitution or Section 15 of the Kansas Constitution Bill of Rights. At issue is public safety, and in *Vistuba* we found persuasive the following observation by the United States Supreme Court in upholding a warrantless search of defendant's vehicle based on public safety reasons:

" 'Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' " 251 Kan. at 824 (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 [1973]).

Here, the stop was made in Lyon County rather than Coffey County, but that is a distinction without a difference. In our view, there is no valid reason to limit a valid safety stop by Deputy Smith to Coffey County.

Affirmed.

DAVIS, J., not participating.

BRAZIL, S.J., assigned█