(153 P.3d 557)
No. 94,318

STATE OF KANSAS, *Appellee*, v. CODY D. HESS, *Appellant*.

—

Opinion filed November 17, 2006.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before PIERRON, P.J., JOHNSON, J., and BUKATY, S.J.

JOHNSON, J.: Cody D. Hess appeals the denial of his motion to suppress the evidence obtained through a search of his person and of his automobile, following a traffic stop. He claims that the initial traffic stop was unconstitutional, that the officer exceeded the legitimate scope of the traffic stop detention, and that the officer lacked the requisite probable cause to conduct a warrantless search of Hess' pockets and his automobile. Finding that the law enforcement officer's suspicion that Hess was driving while impaired was not objectively reasonable, we reverse.

At approximately 11 p.m., Hess was driving his Camaro in the right-hand lane of a four-lane street which had broken white lines separating the two same-direction lanes. A deputy following the Camaro observed the vehicle was traveling close to the lane divider lines and perceived that the vehicle would occasionally drive upon or touch the broken lines. The deputy effected a traffic stop which was accomplished in a normal fashion.

Following the stop, the deputy obtained Hess' driver's license and vehicle information and returned to the patrol car to conduct a computer check. After clearing the license and vehicle, the deputy returned to the Camaro to give Hess his documents; the deputy had not prepared a traffic citation. During this second contact, the deputy detected an odor of burnt marijuana.

The deputy had Hess exit the vehicle, and they had a discussion about the vehicle's tires. The deputy did a pat-down of Hess and directed him to sit on the curb. The ensuing vehicle search failed to produce any evidence, but the deputy perceived a pungent odor of marijuana inside the vehicle. The deputy then conducted a second pat-down and searched Hess' pockets, removing $470 which was counted and returned to Hess. The deputy removed the car keys, handed them to Hess, and directed him to open the trunk, where a plastic bag containing three bricks of marijuana was discovered in a duffle bag. Hess was arrested on drug charges and given a verbal warning about failing to maintain a single lane.

Hess filed a suppression motion, challenging the traffic stop and the subsequent searches. In denying the motion, the district court

found that the traffic stop was justified by the deputy's reasonable suspicion that the Camaro driver was impaired, that a continuation of the detention was justified because the smell of marijuana provided reasonable suspicion of additional criminal activity, and that the vehicle search was based on a probable cause that some crime related to marijuana was being committed.

On appeal, Hess first contends that the deputy did not have the requisite reasonable suspicion of criminal activity to justify the initial stop of his vehicle. In the alternative, Hess argues that his detention exceeded the scope of a traffic stop because he should have been released after the records check and because the deputy's search of his pockets exceeded the pat-down authorized by a *Terry* stop. Finally, Hess argues that the smell of marijuana alone cannot provide the requisite probable cause to conduct warrantless searches.

## STANDARD OF REVIEW

All of Hess' appeal issues are based upon the denial of his suppression motion. Thus, our review is well settled.

"In reviewing a district court's decision regarding suppression, this court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment. This court does not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. [Citation omitted.]" *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006).

To the extent that the issues involve undisputed material facts, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). Moreover, the State bears the burden of proof in a suppression motion; it must prove the lawfulness of the search and seizure. 281 Kan. at 324.

Hess raises a collateral question as to whether we must afford the district court deference on its findings because the deputy's videotape of the stop is part of the record. He contends that we can independently review the videotape to determine the deputy's credibility, as for instance whether the videotape confirms that Hess' vehicle touched upon the lane divider lines.

However, the case upon which Hess relies, *State v. Binette*, 33 S.W.3d 215, 216 (Tenn. 2000), is distinguishable. There, the officer did not testify. Here, the deputy testified and that testimony touched upon matters which were not revealed by the videotape. Thus, although we can consider whether the videotape supports the district court's findings, we feel constrained to invade the district court's province of determining witness credibility and weighing the evidence. See *State v. Hardyway*, 264 Kan. 451, 456, 958 P.2d 618 (1998). Moreover, we do not perceive a significant contradiction between the officer's testimony and the videotape on the material facts.

## INITIAL TRAFFIC STOP

The underlying legal principles governing traffic stops is well settled, albeit the application of those principles can vary. We take the liberty of borrowing a recent recitation of traffic stop law.

" 'The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and § 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures.' *Ramirez*, 278 Kan. at 404. The stopping of a moving vehicle by law enforcement is always considered a seizure. *City of Norton v. Stewart*, 31 Kan. App. 2d 645, 647, 70 P.3d 707 (2003).

"However, our courts consider a moving vehicle seizure to be an investigatory detention, as originally defined by *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Kansas has codified the parameters of a permissible *Terry* stop in K.S.A. 22-2402(1), which provides:

'Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name [and] address of such suspect and an explanation of such suspect's actions.'

"To lawfully stop a moving vehicle under *Terry* and K.S.A. 22-2402(1), a law enforcement officer must ' "have a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime." ' *State v. DeMarco*, 263 Kan. 727, 734, 952 P.2d 1276 (1998) (quoting *State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 [1985]). 'Something more than an unparticularized suspicion or hunch must be articulated. *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989).' *DeMarco*, 263 Kan. at 735. However, reasonable suspicion is something less than the probable cause required for an arrest. *State v. Slater*, 267 Kan. 694, 697, 986 P.2d 1038 (1999) (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S.

Ct. 2412 [1990]) (" '[r]easonable suspicion is a less demanding standard than probable cause' ").

"Both reasonable suspicion and probable cause are dependent upon the ' "content of information possessed by police and its degree of reliability," ' and ' "[b]oth factors—quantity and quality—are considered in the 'totality of circumstances,' " ' *i.e.*, one must evaluate the whole picture. *Slater*, 267 Kan. at 697 (quoting *Alabama*, 496 U.S. at 330)." *State v. Hamic*, 35 Kan. App. 2d 202, 205-06, 129 P.3d 114 (2006).

Hess devotes a part of his argument to contending that the district court erred in finding that the Camaro's touching of the lane divider lines constituted the traffic infraction of failing to maintain a single lane. However, we do not perceive that the district court made that finding. The district court's statements suggest that it upheld the stop based upon the officer's reasonable suspicion that the Camaro's driver was impaired, rather than upon the commission of a traffic infraction. Therefore, the question presented is whether the deputy had a reasonable suspicion from the totality of the circumstances that Hess was driving while impaired.

The deputy acknowledged that erratic driving, slow driving, fast driving, drifting, veering, sudden stops, and not signaling are typical signs that a driver might be impaired. Hess did not exhibit any of those signs. Rather, the deputy relied upon his observation that the vehicle was "hugging the line." The deputy opined that, in his experience, when a driver is either hugging the line or closely following the curb, it indicates that the driver is "concentrating harder" because of the driver's impairment.

The State reminds us that we are to look at the totality of the circumstances viewed from the perspective of a law enforcement officer. See *State v. Toney*, 253 Kan. 651, 656-57, 862 P.2d 350 (1993) (citing *State v Vistuba*, 251 Kan. 821, Syl. ¶ 1, 840 P.2d 511 [1992]). It points out that our Supreme Court has held that, for safety reasons and without the occurrence of a traffic violation, a vehicle may be stopped when there is a reasonable suspicion that the driver may be impaired. *State v. Field*, 252 Kan. 657, 660-61, 847 P.2d 1280 (1993). In *Field*, the court permitted the stop where the seizing officer observed the suspect vehicle weaving within its lane approximately four times at 2 a.m. We perceive of a rather

significant distinction between weaving within one's lane and driving too straight in relation to the lane markers.

Pointedly, the *Field* court was persuaded by other jurisdictions which had found repeated weaving of a vehicle within its own lane to provide an officer with sufficient reasonable suspicion to stop and investigate the driver. 252 Kan. at 662-64. To the contrary, the published cases finding reasonable suspicion where hugging the line or curb is mentioned do not rely solely on that fact, but involve other factors contributing to the totality of the circumstances. See, *e.g.*, *State v. Flowers*, 131 Idaho 205, 208-09, 953 P.2d 645 (1998) (driving slow, "hugging of the fog line," weaving within own lane of traffic, and crossing both the fog line and centerline). Here, the State's cursory statement that "[i]t was 11:00 p.m. and there were drinking establishments in the vicinity" adds little of substance to the totality of the circumstances. Those innocuous facts were certainly not particularized to the situation; we do not know whether the four-lane road was sparsely traveled at 11 p.m. or whether its principal purpose was to provide access to and from the bars in the vicinity.

On the other hand, at least one foreign jurisdiction has rejected the notion that driving on the white line provides reasonable suspicion to stop an automobile without the presence of other indicators of possible intoxication, such as erratic driving or weaving. *State v. Smith*, 21 S.W.3d 251, 258 (Tenn. Crim. App. 1999). Similarly, *United States v. Gregory*, 79 F.3d 973, 978-79 (10th Cir. 1996), found that an officer's suspicion that a driver was impaired because he entered into the right emergency lane of an interstate highway failed to meet the Fourth Amendment reasonableness test because the terrain was mountainous, the roadway was winding, and the weather was windy.

We do not know whether Hess, when unimpaired, normally drives in a straight line adjacent to the lane divider. In fact, Hess was convicted of crimes relating to the possession of marijuana and not for having driven while impaired while he was "hugging the line." Thus, although the deputy articulated a suspicion that Hess was committing the crime of operating a vehicle while impaired, that suspicion was not objectively reasonable and particularized

under the facts presented. It was an unparticularized hunch. Therefore, the district court erred in finding the initial traffic stop to be lawful, and we reverse.

Because we find that Hess' detention was unauthorized from its inception, we need not address the remaining issues raised by Hess in the alternative. We do note, however, that our recent case of *State v. Gonzales*, 36 Kan. App. 2d 446, 141 P.3d 501 (2006), discussed the permissible scope of a detention which is based upon public safety concerns.

Reversed.