NOT DESIGNATED FOR PUBLICATION

No. 114,326

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARK K. STEADMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM SIOUX WOOLLEY, judge. Opinion filed October 7, 2016. Affirmed.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER and LEBEN, JJ.

*Per Curiam*: A police officer can stop a car for good reasons, not a hunch. At 2 a.m. near a bar, the officer in this case saw Mark K. Steadman, driving almost 20 miles per hour *below* the speed limit, intermittently braking, and driving at the extreme right side of the roadway, turn into the parking lot of a closed business and run over the curb while turning. The district court ruled that these facts created a reasonable suspicion that the driver might be impaired. We agree and affirm Steadman's convictions for driving under the influence and impeding normal traffic by his slow speed.

1

*While on patrol, an officer noticed a slow-moving car.*

Shortly after 2 a.m. a Wichita police officer was northbound on South Broadway heading toward 55th Street. When the officer was near the 5700 block, he noticed a car traveling at a slow rate of speed in front of him. Because he was traveling at the posted speed limit of 45 miles per hour, the officer was rapidly catching up to the car in front of him.

Additionally, the car was in the "extreme right-hand portion of its lane nearly along the curb line, was braking intermittently, then eventually signaled a turn into a parking lot driving over the curb as it turned into the lot." The officer then testified that based upon his observations about the way the car was traveling, the time of day, and location of at least one bar nearby, he "became suspicious the driver may be impaired by alcohol." The officer said that his observations were consistent with a person driving under the influence based on his training.

The officer testified, "As he turned into the lot of the closed business, I activated my emergency equipment, initiated a traffic stop with him." On cross-examination, the officer clarified that he "decided to make the stop when [Steadman] activated his turn signal and began to turn into the parking lot at the closed business." The officer also testified that Steadman struck the curb when he turned into the parking lot.

Steadman has a different view of the events. Steadman admitted he was traveling at a low rate of speed, approximately 25 to 30 miles per hour. He was traveling slowly to turn into a QuikTrip, and he needed to change lanes. Steadman denied traveling close to the right-hand curb. However, in his brief he argues he "was driving close to the curb line, but there was no evidence that he ever crossed that line or drove into the curb as he proceeded along the roadway" without any reference to the record. Steadman argues he was braking intermittently due to the officer getting very close to the rear of his vehicle.

2

There is no support in the record for this statement; it does not appear in Steadman's testimony, motion to suppress, or stipulated facts for the bench trial. Steadman testified that he pulled into the parking lot and subsequently hit a curb because the officer activated his emergency lights and it was the first place to stop.

Based upon a belief that the driver of the vehicle was impaired, the officer made a traffic stop. As the officer approached the stopped car, he noticed Steadman having trouble rolling down his window. After the officer knocked on the window Steadman rolled it down, and the officer detected an odor of alcohol coming from the car. The officer told Steadman about the reasons for the stop. At some point during the conversation, Steadman admitted that he had been drinking. Steadman admitted to drinking five or six beers of various sizes; however, he quit drinking around 5 p.m. the evening before he was stopped.

The officer had Steadman get out of his car and perform some field sobriety tests, which he failed. The officer smelled alcohol coming from Steadman's person. A preliminary breath test was administered, and Steadman registered a blood alcohol content of .14. After noting the results of the preliminary breath test, the officer arrested Steadman, transported him to the police station, and administered an Intoxilyzer 8000 breath test. Steadman's test result was a blood alcohol content of .124.

Steadman moved to suppress evidence based upon a claim that the officer did not have a reasonable suspicion to stop him. After the testimony of the officer and Steadman, the parties showed a redacted and an unredacted video of the stop to the judge. These videos were taken into consideration by the judge for his ruling. Neither video was provided with the record on appeal. After viewing the videos, the judge denied the motion to suppress stating:

3

"I do believe that there was probable cause to make the stop, a reasonable suspicion to make the arrest. First of all, you have a slow vehicle, approximately 25 miles an hour in a 45. The intermittent braking, the hugging the curb line on the right-hand side, the driving over a curb, and you can see in the video it's not simply one of those gradual curbs but it's an actual curb.

"All of that is probable cause, not only a violation of the law with regard to the driving, but also with a regard to DUI or impairment. Also, you know, the law authorizes police to make stops for health or safety, health and welfare concerns. You know, is this a driver with a medical condition, and it wasn't testified to, but from the video there, this could be somebody that's experiencing some sort of medical issue, that kind of driving you see there."

Additionally, the judge ruled there was reasonable suspicion to make the arrest based upon the difficulty with the window controls, odor of alcohol, admission of drinking, and failed field sobriety tests.

Following the ruling on the motion to suppress, Steadman waived his right to a jury trial and proceeded with a bench trial on stipulated facts. He was convicted of driving under the influence with a blood alcohol content greater than .08 and impeding normal traffic by slow speed. He was sentenced to 90 days in jail and ordered to pay a $2,545 fine. Steadman appeals.

The parties do not dispute how Steadman was driving but do dispute its significance. Steadman does not challenge that he was:

- Driving 25 miles per hour;
- braking intermittently;
- hugging the curb line;
- turned into the parking lot of a closed business; or
- ran over the curb.

4

Although he provides reasons why he was driving this way, Steadman does not deny how he was driving. Actually, Steadman asks this court to reweigh the evidence and the credibility of the testimony, which we cannot do. See *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

*We review some cases.*

Our review of the cases leads us to agree with the trial court's conclusion. In *State v. Field*, 252 Kan. 657, 847 P.2d 1280 (1993), a car was weaving in its lane multiple times at 2:13 in the morning. These two facts, along with the training and experience of the officer, were sufficient to support a finding of reasonable suspicion. 252 Kan. at 664. In *State v. Campbell*, No. 109,109, 2013 WL 6726167, at *3-4 (Kan. App. 2013) (unpublished opinion), this court relied upon a car being driven 10 miles an hour below the speed limit, and then speeding up to or above the speed limit, as one factor for an officer having reasonable suspicion of DUI. Swerving within the lane was another factor the court considered in *Campbell*. 2013 WL 6726167, at *3-4.

In *City of Wichita v. Molitor*, 301 Kan. 251, 268, 341 P.3d 1275 (2015), the Supreme Court considered a person running into a curb as a factor for reasonable suspicion of intoxication. The court in *Molitor* analyzed whether there was reasonable suspicion for a preliminary breath test and not for a stop of a vehicle. Although the court denied that reasonable suspicion existed, in its analysis it stated: "Obviously, evidence of unsafe driving can suggest intoxication." 301 Kan. at 268. In *State v. Hamman*, 273 Kan. 89, 90-91, 95, 41 P.3d 809 (2002), a case which looked at whether a stop was valid when an officer pulled a vehicle over outside the officer's jurisdiction, the Supreme Court accepted very slow driving, driving on the far right side of a road, along with swerving in the lane, as support for the officer having reasonable suspicion to make a stop.

If we look at the entire picture of Steadman's driving, it supports a reasonable officer having a reasonable suspicion that Steadman was driving while impaired. Reasonable suspicion only requires a minimum level of objective justification for the stop. *State v. Thomas*, 291 Kan. 676, 688, 246 P.3d 678 (2011). The quantity and quality of the facts articulated on the record show that an articulable suspicion existed. See *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013).

Steadman was driving 25 miles per hour in a 45-mile-per-hour zone. Driving well below the speed limit can be a fact that leads to an officer having reasonable suspicion of a person driving under the influence. *Hamman*, 273 Kan. at 90-91; *Campbell*, 2013 WL 6726167, at *3-4. Driving at this speed could also be considered unsafe, and therefore evidence of intoxication. See *Molitor*, 301 Kan. at 268.

Intermittent braking is a sign of intoxication. In *State v. Hess*, 37 Kan. App. 2d 188, 192-94, 153 P.3d 557 (2006), one of the "typical signs" of impaired driving was "sudden stops." Intermittent braking is comparable to making a sudden stop. Additionally, braking for no reason was one of many factors that permitted a stop in *State v. Muller*, No. 99,134, 2008 WL 2370161, at *3 (Kan. App. 2008) (unpublished opinion). Here, braking for no reason seems to be synonymous with intermittent braking, and this court should consider the intermittent braking as a sign of intoxication, supporting reasonable suspicion for the stop.

Steadman was driving on the extreme right-hand portion of the lane. Driving on the extreme portion of a lane is a fact that can lead to an officer having a reasonable suspicion of driving under the influence. See *Hamman*, 273 Kan. at 90-91. Steadman's driving on the extreme portion of the lane is distinguishable from the driving in *Hess*. The location of the car in the lane is not the only fact which led the officer to believe Steadman was impaired. But see *Hess*, 37 Kan. App. 2d at 193-94. Instead, Steadman's

driving on the extreme portion of the lane is one of many facts that tend to show intoxication.

The fact that Steadman drove over the curb while making the turn is a fact that supports the officer having reasonable suspicion that he was intoxicated. In *Molitor*, the only factor in favor of reasonable suspicion of intoxication was running over a curb and that type of unsafe driving led to an inference of intoxication, which was rebutted by the rest of the encounter. 301 Kan. at 268.

The officer testified that based on his training, his observations were consistent with a car being driven while under the influence of alcohol. The training and experience of an officer is a valid consideration in determining whether reasonable suspicion exists. *Field*, 252 Kan. at 664; see *State v. Moore*, 283 Kan. 344, 360, 154 P.3d 1 (2007). Here, it is obvious that the officer was acting on a particularized suspicion and not a mere hunch regarding criminal activity.

Affirmed.