No. 67,267

STATE OF KANSAS, *Appellant,* v. KENNETH J. VISTUBA, *Appellee.*

(840 P.2d 511)

Opinion filed October 30, 1992.

*Thomas J. Drees,* assistant county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellant.

No appearance by appellee.

The opinion of the court was delivered by

SIX, J.: This is a first impression vehicle "safety stop" case. The issue is whether a law enforcement officer is justified in stopping a vehicle based on specific and articulable observations of erratic driving which could reasonably lead to an officer's belief that the driver is falling asleep. The reason for the stop is the safety of the driver and other highway users.

The State appeals the dismissal of a complaint charging Kenneth J. Vistuba with driving while under the influence (DUI) (K.S.A. 8-1567).

Our jurisdiction is under K.S.A. 22-3602(b)(1) (appeal by the prosecution as a matter of right from an order dismissing a complaint). Our standard of review is abuse of discretion. *State v. Ward,* 233 Kan. 144, 145, 660 P.2d 957 (1983).

We hold that such a safety stop is permissible. We find an abuse of discretion and reverse the trial court. The complaint is reinstated and the case remanded for further proceedings.

## Facts

During the early morning hours in July 1991, Vistuba was

arrested and charged with DUI. He pled not guilty and filed a motion to dismiss the complaint. The basis for the motion rested on the theory that the arresting officer, a deputy sheriff, did not have a K.S.A. 1991 Supp. 22-2402 reasonable suspicion to stop Vistuba.

The deputy testified that while on routine patrol she: (1) observed Vistuba driving below the speed limit and hugging the curb; (2) followed Vistuba out of the city limits for approximately two and one-half to three miles (the county road is blacktop with no curbing); and (3) observed Vistuba's pickup go towards the ditch, turn back, go towards the ditch again, and then be jerked back. The pickup did leave the roadway onto the dirt shoulder; however, it always returned to the roadway.

The deputy testified: "I was afraid that the driver was possibly falling asleep because of the way the vehicle was traveling. So I turned on my red light and pulled the vehicle over."

The direct examination of the deputy by defense counsel concluded as follows:

"Q. . . . . Do you have any reason to believe he had committed any crimes?

"A. No.

"Q. That he was in the commission of any crime?

"A. No.

"Q. Was about to commit any crime?

"A. No, I had no reason to believe that.

"Q. You did not think that he was necessarily a suspicious person then, is that correct?

"A. No."

On cross-examination by the State, the deputy testified that Vistuba did leave his lane of traffic when he drove off the right side of the road, but he did not cross the center line. She then testified:

"Q. You have indicated that you stopped him to check him after he had left the road and then jerked it back?

"A. I checked him to make sure that he wasn't falling asleep, and to find out why he was driving the way he was."

Vistuba, asserting that the stop was illegal, relied on the deputy's testimony that she had no reasonable suspicion, as required by K.S.A. 1991 Supp. 22-2402, that he was committing, had committed, or was about to commit a crime.

The trial court dismissed the DUI charge, reasoning:

"[The deputy] was merely acting for the safety of the driver and any other member of the public that happened to be around, in case the defendant driver went to sleep behind the wheel.

"The Court feels that [the deputy] acted reasonably in stopping the vehicle for the purpose of the driver's protection. But since there was no reasonable suspicion of the defendant having committed a crime, [was] about to commit a crime or was in the process of committing a crime, then the arrest of the defendant following the stop was illegal, and the charge of driving while under the influence against the defendant should be dismissed."

## The State's Contentions

The State contends that the deputy had "probable cause" to stop Vistuba under K.S.A. 1991 Supp. 22-2402 because she observed a traffic violation, *i.e.*, failure to maintain a single lane of traffic (K.S.A. 8-1522). The State, in requesting that the complaint be reinstated, emphasizes that the trial court erred in finding the stop illegal.

The State asserts that the deputy observed Vistuba commit the traffic violation of failure to maintain a single lane of traffic. This assertion is true in that the deputy did observe the violation; however, the traffic violation was not the reason Vistuba was stopped.

## K.S.A. 1991 Supp. 22-2402
K.S.A. 1991 Supp. 22-2402(1) provides:

"Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name [and] address of such suspect and an explanation of such suspect's actions."

K.S.A. 1991 Supp. 22-2402(1), the Kansas stop and frisk statute, is a codification of the Fourth Amendment search and seizure principles expressed in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). *State v. McKeown*, 249 Kan. 506, 508-09, 819 P.2d 644 (1991).

The stop of a vehicle being driven on the streets always constitutes a seizure. "The 'stop' authorized by K.S.A. 22-2402 requires that a law enforcement officer must have prior knowledge of facts or observe conduct of a person which causes the officer to reasonably suspect that such person is committing, has com-

mitted, or is about to commit a crime." *State. v. Epperson,* 237 Kan. 707, Syl. ¶ 2, 703 P.2d 761 (1985).

## The Safety Stop

The deputy testified that she had no reason to believe Vistuba was committing, had committed, or was about to commit a crime. When asked on cross-examination whether Vistuba's driving on the shoulder constituted failing to maintain a single lane of traffic, she stated: "I would have to read the wording on it, but yes, it would be."

The stop, based on specific and articulable facts, was made for safety reasons.

We agree with the reasoning of the Supreme Judicial Court of Maine in *State v. Pinkham,* 565 A.2d 318, 319 (Me. 1989) (a case involving a stop "merely for safety reasons" at 2:00 a.m. when defendant traveled straight ahead from a right-turn-only lane).

"Nothing in the Fourth Amendment requires that the 'specific and articulable facts' relate to suspected criminal activity, although that was the factual context of both *Terry [v. Ohio,* 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968),] and *[State v.] Griffin,* [459 A.2d 1086, 1089 (Me. 1983)]. If we were to insist upon suspicion of activity amounting to a criminal or civil infraction to meet the *Terry/Griffin* standard, we would be overlooking the police officer's legitimate role as a public servant to assist those in distress and to maintain and foster public safety."

We hold that a civil or criminal infraction is not always essential to justify a vehicle stop. Safety reasons alone may justify the stop, *if the safety reasons are based upon specific and articulable facts. State v. Fuller,* 556 A.2d 224 (Me. 1989) (defendant's vehicle stopped for blinking headlights thought to be defective).

We find persuasive the observation of the United States Supreme Court in *Cady v. Dombrowski,* 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973) (upholding, for public safety reasons, a search of out-of-state police officer's abandoned rental vehicle before leaving it unattended, on the belief that it might contain his service revolver):

"Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."

Conduct prohibited under section 15 of the Kansas Bill of Rights is also prohibited under the Fourth Amendment to the United States constitution. *State v. Bishop,* 240 Kan. 647, 656, 732 P.2d 765 (1987).

A vehicle stop does not violate either the Fourth Amendment of the United States Constitution or section 15 of the Kansas Bill of Rights if the stop is based upon specific and articulable facts which constitute adequate grounds to believe that the driver is falling asleep.

Police officers do not violate the Fourth Amendment if they stop a vehicle when they have adequate grounds to believe the driver is ill or falling asleep. *Cf.* 3 LaFave, Search & Seizure § 7.4(f), pp. 123-24 (2d ed. 1987 & 1992 Supp.) and cases cited at n.114.

Reversed and remanded with directions to reinstate the complaint.