No. 68,005

STATE OF KANSAS, *Appellant*, v. TODD A. FIELD, *Appellee*.

(847 P.2d 1280)

Opinion filed March 5, 1993.

*Glenn R. Braun,* county attorney, and *Robert T. Stephan,* attorney general, were on the brief for appellant.

*Donald E. Reif, Jr.,* of Hoisington, was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: The State appeals the dismissal of a complaint charging Todd A. Field with driving while under the influence of alcohol or drugs. See K.S.A. 8-1567. The district court granted defendant's motion to dismiss based upon its finding that the arresting officer lacked a reasonable suspicion to stop defendant's vehicle.

The facts are not in dispute. On February 20, 1992, at approximately 2:00 a.m., Hays police officer David Bunger was on routine patrol in Hays. Officer Bunger testified that while driving northbound on Vine Street, at approximately the 2200 block, he observed a white pickup driven by the defendant. In the 2200 block the truck "weaved from the middle of its lane to the outside of the lane, to the inside of the lane and back to the middle." Between the 2500 block and the 2700 block of Vine Street, Officer Bunger observed defendant's vehicle weave within its lane three additional times. In about the 3300 block of Vine, the officer stopped defendant's vehicle. When asked why he stopped the defendant, the officer testified: "It has been my training that given the hour of day—and this was approximately . . . 2:13 in the morning—and if the driver, regardless whether they make a traffic infraction or not, if they are weaving within their lane a number of times, they may be impaired to some degree." After further investigation the defendant was arrested for driving while under the influence of alcohol. The district court dismissed the case on the grounds that the officer lacked reasonable suspicion to stop defendant's vehicle. The State appeals the dismissal of the complaint pursuant to K.S.A. 22-3602(b)(1).

The sole issue the State raises on appeal is whether the officer's observation of a vehicle weaving within its own lane over the

course of several blocks gave rise to a reasonable suspicion to believe that the driver was driving while under the influence of intoxicants to justify a stop for further investigation. K.S.A. 1992 Supp. 22-2402(1) provides:

"Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name [and] address of such suspect and an explanation of such suspect's actions."

The statute is a codification of the United States Supreme Court decision in *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), which held that an officer may stop and frisk an individual even though the officer does not have probable cause to believe a crime has been or is being committed if the officer is able to point "to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21.

In *State v. McKeown,* 249 Kan. 506, 819 P.2d 644 (1991), this court, in discussing a stop pursuant to our statute and the requirements set forth in *Terry,* stated:

"Such a stop always constitutes a seizure. Therefore, to stop a moving vehicle an officer must have articulable facts sufficient to constitute reasonable suspicion under K.S.A. 22-2402 and *Terry. Delaware v. Prouse,* 440 U.S. 648, 661-63, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). To stop a vehicle to investigate circumstances which provoke suspicion, an officer must be aware of 'specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion' that the vehicle contains individuals involved in criminal activity. *United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975)." 249 Kan. at 510.

In *State v. Finley,* 17 Kan. App. 2d 246, 249-51, 838 P.2d 904, *rev. denied* 251 Kan. 940 (1992), the Court of Appeals reviewed the distinction between reasonable suspicion and probable cause, stating:

"Reasonable suspicion is not the same as probable cause. In *United States v. Sokolow,* 490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989), the Court conducted a thorough examination into the meaning of reasonable suspicion. The Court stated:

'The officer, of course must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.' " [Citation omitted.] The Fourth Amendment requires "some minimal level of objective justification" for making the stop. [Citation omitted.] That level of suspicion is considerably less than proof of wrongdoing by a preponderance

of the evidence. We have held that probable cause means "a fair probability that contraband or evidence of a crime will be found," [citation omitted] and the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause.' 490 U.S. at 7.

"In *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990), the United States Supreme Court expounded on the differences between reasonable suspicion and probable cause:

'Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. . . . Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture" (citation omitted) that must be taken into account when evaluating whether there is reasonable suspicion.'

See also *State v. Hayes*, 2 Kan. App. 2d 517, 597 P.2d 268, *rev. denied* 226 Kan. 793 (1979), for a discussion of the distinction between probable cause and reasonable suspicion.

. . . .

"It is important to remember that . . . the law enforcement officer does not have to *know* that the defendant committed a crime. Merely pointing to some facts that would cause a reasonable person to be suspicious is enough to conduct a *Terry* stop."

In applying this standard, the court should consider the totality of the circumstances and the fact that trained law enforcement officers are permitted to make "inferences and deductions that might well elude an untrained person." *United States v. Cortez*, 449 U.S. 411, 418, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981). See *State v. Kvam*, 336 N.W.2d 525, 528 (Minn. 1983).

On appeal, defense counsel urges this court to affirm the dismissal, contending that in the absence of a traffic violation, the officer could not have had a reasonable suspicion of criminal activity sufficient to justify stopping defendant's vehicle. The State, on the other hand, contends Officer Bunger's testimony regarding the defendant's erratic driving was enough to create a reasonable suspicion that the driver was operating the vehicle while under the influence of alcohol. The State points out that an officer need not witness a criminal act in order to make a valid stop and that the stop may be made upon grounds separate and apart from the statute. This court's most recent statement of

this principle is found in *State v. Vistuba*, 251 Kan. 821, Syl. ¶ 1, 840 P.2d 511 (1992): "A civil or criminal infraction is not always essential to justify a vehicle stop. Safety reasons alone may justify the stop if the safety reasons are based upon specific and articulable facts."

In *Vistuba*, a police officer observed defendant's pickup truck drift towards a ditch, swerve back, drift towards the ditch again, and then jerk back onto the roadway. The pickup drove off the roadway onto the dirt shoulder; however, it always returned to the roadway. At no time during the officer's observation did it cross the center line. The officer followed the defendant out of the city limits for approximately two and one-half to three miles before pulling the defendant over. After further investigation, the defendant was arrested and charged with driving while under the influence.

The trial court held a hearing on defendant's motion to dismiss the complaint. On direct examination by defense counsel, the officer testified that during her observation of defendant's vehicle, she had no reason to believe the defendant had committed, was committing, or was about to commit a crime. The officer testified that the reason she stopped the defendant was because she was concerned that the driver may have been falling asleep.

The trial court dismissed the complaint on the grounds the officer did not have sufficient reasonable suspicion to stop the defendant's vehicle, as the officer did not suspect any criminal activity on the part of the defendant. This court reversed the trial court's dismissal of the complaint and held that public safety reasons alone, if based upon specific and articulable facts, may justify an officer's investigatory stop. In doing so this court relied upon *State v. Pinkham*, 565 A.2d 318, 319 (Me. 1989), wherein the Maine court stated:

" 'Nothing in the Fourth Amendment requires that the "specific and articulable facts" relate to suspected criminal activity, although that was the factual context of both *Terry [v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968),] and *[State v.] Griffin*, [459 A.2d 1086 (Me. 1983)]. If we were to insist upon suspicion of activity amounting to a criminal or civil infraction to meet the *Terry/Griffin* standard, we would be overlooking the police officer's legitimate role as a public servant to assist those in distress and to maintain and foster public safety." 251 Kan. at 824.

*Vistuba,* however, is not controlling in the present case. In *Vistuba,* the officer testified she did not suspect any criminal activity, while in the present case, Officer Bunger suspected the driver of the pickup was driving while under the influence of alcohol or drugs, a crime. The issue here is whether such suspicion was reasonable under the facts of this case.

While counsel have cited no Kansas cases directly on point, and our research has revealed· none, courts in other jurisdictions have held that a police officer's observations of a vehicle weaving within its own lane of traffic gives rise to a reasonable suspicion of criminal activity sufficient to justify an investigatory stop.

A case factually similar to the case at bar is *State v. Bailey,* 51 Or. App. 173, 624 P.2d 663, *rev. denied* 291 Or. 1 (1981). There, the State appealed from an order of the district court granting defendant's motion to suppress all evidence obtained after a traffic stop.

In *Bailey,* the defendant was driving his pickup truck about 11:30 p.m. when a police officer observed defendant's vehicle weaving in its own lane. The officer followed the defendant for approximately four to five blocks; the defendant's truck continued to weave within its own lane during the time the officer followed him. The officer stopped the defendant about a quarter mile outside the city limits. The only question presented on appeal was whether the officer's observation of defendant's truck weaving within its own lane was an adequately specific and articulable fact to give rise to a reasonable suspicion to justify the stop. The court noted that in a past case, it had concluded that an officer had reasonable suspicion to stop a car when the officer (a) observed weaving of the car within its own lane and (b) had been informed by a radio check that the vehicle was registered to a wanted person. The court observed it was now called upon to determine whether the holding of the past opinion indicated two independent bases for stopping the car or whether the two factors together gave rise to reasonable cause to stop. *Bailey* held that the observation of a vehicle weaving within its own lane for a substantial distance, standing alone, creates sufficient reasonable suspicion to believe that the driver was driving while under the

influence of intoxicants and justifies a stop for further investigation. The court reversed and remanded for further proceedings.

Another case directly on point is *People v. Perez*, 175 Cal. App. 3d Supp. 8, 221 Cal. Rptr. 776 (1985). In *Perez*, the State appealed from an order of the municipal court dismissing the case. The appellate court held that pronounced weaving within a lane provided an officer with reasonable cause to stop the vehicle on suspicion of driving while under the influence. The facts of *Perez* are quite similar to those of the instant case and are set forth in the case as follows:

"At approximately 2:15 a.m. on May 31, 1984, Officer Alvernaz observed an orange Opel automobile driven by respondent eastbound on Interstate 8. The officer's attention was drawn to the vehicle because of a 'pronounced weaving' within the lane. The officer described the drift as being two feet in each direction. The officer followed the vehicle while it was weaving for about three-quarters of a mile. Due to the weaving observed by the officer the vehicle was stopped. The detention was predicated on the officer's belief that the driver was under the influence of alcohol.

"The municipal court found that the detention was unlawful and that weaving alone within a marked lane was not sufficient cause to stop the vehicle." 175 Cal. App. 3d Supp. at 10.

The court in reaching its decision stated:

"Although it has been clearly established in this state that weaving from one lane to another justifies an investigatory stop [citations omitted] no court in California has yet addressed the issue of whether an officer may lawfully detain a driver who has been observed to be weaving within his lane. However, a motorist driving in an 'eccentric manner' on a freeway has been deemed to be indicative of one driving under the influence justifying an investigatory stop. (*People v. Manis* (1969) 268 Cal. App. 2d 653 [74 Cal. Rptr. 423].) In addition, decisions from outside this jurisdiction have routinely held that weaving within one's lane for substantial distances are facts which give rise to a reasonable suspicion that one is driving under the influence. For instance, in *State v. Bailey* (1981) 51 Or. App. 173 [624 P.2d 663], an Oregon court held that weaving within a lane for a period of four or five blocks justified an investigatory stop. Similarly, in *Ebona v. State* (Alaska 1978) 577 P.2d 698, the defendant's vehicle was 'continually weaving' but at all times remained in its lane. The court ruled that the reoccurring weaving justified the officer's detention. In *State v. Dorendorf* (N.D. 1984) 359 N.W.2d 115, an officer observed a vehicle weaving within its own lane of traffic for approximately one-eighth to one-quarter of a mile. Here too the court determined that such facts gave rise to a reasonable belief that the driver was under the influence, rejecting the defendant's argument that a smooth continuous weaving within a traffic lane does not give cause to

detain. (See also *State v. Kvam* (Minn. 1983) 336 N.W.2d 525.)" 175 Cal. App. 3d Supp. at 10-11.

Accordingly, the court reversed the municipal court's dismissal of the case.

The Arizona Supreme Court has reached a similar conclusion in *State v. Superior Court,* 149 Ariz. 269, 273, 718 P.2d 171 (1986).

The defendant relies upon *State v. Epperson,* 237 Kan. 707, 703 P.2d 761 (1985), and *State v. Jackson,* 213 Kan. 219, 515 P.2d 1108 (1973), for the proposition that the officer must have a reasonable and articulable suspicion, based on fact, that the person has committed, is committing, or is about to commit a crime. He then contends that as the officer did not observe any traffic violation, there are insufficient facts upon which to find a reasonable suspicion. Defendant's reliance upon the two cases is misplaced. The statements from *Epperson* and *Jackson* merely emphasize the fact that all that is required under the statute is sufficient facts to support a reasonable suspicion that the suspect "is committing, has committed or is about to commit a crime." There is no requirement that the officer actually observe a traffic violation being committed. As indicated by the other cases cited herein, the repeated weaving of a vehicle within its own lane may constitute sufficient reasonable suspicion for an officer to stop and investigate the driver of the vehicle.

We conclude that under the facts of this case, including the training and experience of the arresting officer, Officer Bunger has clearly shown articulable facts sufficient to constitute reasonable suspicion under K.S.A. 1992 Supp. 22-2402(1) and the trial court erred in dismissing the complaint.

One final matter remains. In *Vistuba,* we stated that our standard of review was whether the trial court abused its discretion. 251 Kan. 821. However, in *State v. Hayes,* 3 Kan. App. 2d 517, 597 P.2d 268, *rev. denied* 226 Kan. 793 (1979), the Court of Appeals stated, under the facts of that case, the question of whether reasonable suspicion existed under 22-2402 is a question of law to be determined by the appellate court. Our review of the cases cited in this opinion convinces us that the determination of whether an officer has reasonable suspicion to stop a vehicle is a question of law, or in some cases a mixed question of law

and fact, for the appellate court to determine under the totality of the facts and circumstances. Our statement in *Vistuba* that the appropriate scope of review is abuse of discretion is disapproved.

The judgment is reversed, and the case is remanded with directions to reinstate the complaint.