NOT DESIGNATED FOR PUBLICATION

No. 122,667

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ABRAM JON ROTH,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed May 7, 2021. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Kimberly A. Rodebaugh*, senior assistant district attorney, *Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., GREEN and BUSER, JJ.

PER CURIAM: Abram J. Roth appeals the district court's denial of his motion to suppress evidence based on a warrantless search and seizure of his automobile. The law enforcement officer conducted a public safety check on Roth's welfare which transformed into an investigatory detention. As a result, the officer developed probable cause to conduct a warrantless search of Roth's vehicle and the seizure of contraband and evidence. Finding no error, we affirm the district court's denial of Roth's motion to suppress evidence.

FACTUAL AND PROCEDURAL BACKGROUND

On June 18, 2019, at about 6:15 in the evening, Bert Sigler noticed a man, later identified as Roth, sleeping in the driver's seat of a legally parked Ford Fusion outside of his house. About two hours later, Roth was still asleep in the car, so Sigler—who was concerned the man may have overdosed due to a string of drug overdoses that had occurred in Hutchinson—notified the police.

Officer Robert Winslow of the Hutchinson Police Department was dispatched to respond to the call. When he located the automobile, the window was open and Roth was seated in the driver's seat, sleeping, with his head bowed over. Officer Winslow attempted to wake Roth by knocking on the door. At the time, the keys were in the ignition of the car and Roth had his seat belt fastened. Roth seemed startled upon awakening. Officer Winslow asked, "How are you today, sir? Catching a little nap?" Because Officer Winslow had difficulty communicating with Roth, who had slurred speech, the officer suspected that Roth was impaired.

Officer Winslow asked to see Roth's driver's license. As Roth began reaching around for his license, the officer noticed that Roth picked up an uncapped syringe filled with a substance. The syringe had been placed between the driver's seat and console. Roth quickly dropped the syringe between the seats. Upon viewing Roth's actions, Officer Winslow asked him to get out of the automobile. This request occurred about 1 minute and 14 seconds after Roth was awakened.

Officer Winslow asked Roth about the syringe, and Roth told him it was for his diabetic son. Officer Winslow asked whether Roth usually kept the syringe filled and uncapped. Roth replied, "yeah" and indicated the amount was sufficient in case his son needed it.

Officer Winslow, a 10-year veteran of the Hutchinson Police Department, was familiar with individuals under the influence of methamphetamine. Through his training and experience he knew that methamphetamine could be injected and that it may cause disorientation or lack of memory.

About four minutes after first encountering Roth, Officer Winslow requested a K-9 unit to respond to the scene to investigate the automobile for illicit drugs. When the drug dog arrived less than 10 minutes later, it alerted on Roth's car, indicating the presence of a controlled substance. Officer Winslow searched the car, seizing the filled syringe, a burnt straw covered in residue, several other syringes in an eyeglass case and a handgun. A field test on the substance contained within the syringe, indicated it was methamphetamine—a finding later confirmed by the KBI laboratory. Roth was arrested at the scene.

The State charged Roth with possession of methamphetamine, criminal possession of a firearm, and possession of drug paraphernalia. Prior to trial, Roth filed a motion to suppress the evidence seized from his automobile. He contended that Officer Winslow impermissibly extended the scope of the welfare check by removing Roth from the car without reasonable suspicion that a crime had been committed.

An evidentiary hearing was held which included testimony by Officer Winslow, Sigler, and the viewing of the officer's bodycam recording of the incident. In denying the motion to suppress, the district court ruled:

> "[C]ustody or restraint occurred when the defendant was asked to be taken from the car. And this was after the syringe being observed.
> "The court will find the viewing of the syringe rose to the level of giving an officer a reasonably articulable belief that there were narcotics in the vehicle. The defendant gave an explanation but . . . enough questions existed at that point for the

3

officer to conduct a further investigation . . . in which the dog came and hit, then that clearly established probable cause."

A bench trial was held on stipulated facts. The district court found Roth guilty of possession of methamphetamine, criminal possession of a firearm, and possession of drug paraphernalia.

Prior to sentencing, Roth filed a motion for a dispositional departure. The district court denied Roth's motion and sentenced him to 28 months' imprisonment. Roth timely appeals.

DENIAL OF MOTION TO SUPPRESS EVIDENCE

On appeal, Roth contends the district court erred in denying his motion to suppress evidence because Officer Winslow impermissibly extended the scope of the public safety welfare check and conducted an investigatory detention without reasonable suspicion.

We begin the analysis with our standard of review and a brief summary of relevant search and seizure law. Our court utilizes a bifurcated standard when reviewing a district court's ruling on a motion to suppress:  the factual underpinnings of the decision are reviewed for substantial competent evidence and the court's ultimate legal conclusion is reviewed de novo. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). When, as here, the material facts are not in dispute, suppression is a question of law over which our court's review is unlimited. *State v. Stevenson*, 299 Kan. 53, 57-58, 321 P.3d 754 (2014). Although a defendant initiates a constitutional challenge to a search or seizure by filing a motion to suppress, the State has the burden to prove any challenged police conduct was permissible. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment's Due Process Clause, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights contains similar language and provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." *State v. Daniel*, 291 Kan. 490, 498, 242 P.3d 1186 (2010). Under both the Fourth Amendment and section 15, warrantless searches and seizures by law enforcement officers are deemed unreasonable and invalid unless a recognized exception to the warrant requirement applies. *Doelz*, 309 Kan. at 140.

Whenever a law enforcement officer interacts with a person in a public place, rights granted by the United States Constitution and Kansas Bill of Rights may be implicated. The legal principles applied to safeguard them vary depending on the type of interaction that takes place. *State v. Manwarren*, 56 Kan. App. 2d 939, 945-46, 440 P.3d 606 (2019). Kansas courts recognize four such police-citizen interactions:  (1) voluntary encounters; (2) investigatory detentions; (3) welfare checks or public-safety stops; and (4) arrests. *Cleverly*, 305 Kan. at 605.

In this case, both parties agree that Officer Winslow and his partner were dispatched to perform a welfare check on Roth after he was seen sleeping in his car for about two hours. But Roth argues Officer Winslow exceeded the scope of that welfare check by asking for his driver's license, which quickly led to the discovery of the uncapped and filled syringe in Roth's possession.

Welfare checks fall under law enforcement's community-caretaking function and permit law enforcement officers to check on a person's welfare for safety or assistance reasons. *State v. Vistuba*, 251 Kan. 821, 824, 840 P.2d 511 (1992), *disapproved of on other grounds by State v. Field*, 252 Kan. 657, 847 P.2d 1280 (1993). Neither encounter is meant for investigative purposes. See *State v. Gonzales*, 36 Kan. App. 2d 446, 457, 141

5

P.3d 501 (2006). Welfare checks must be """"divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."""" *State v. Messner*, 55 Kan. App. 2d 630, 637, 419 P.3d 642 (2018).

Kansas courts employ scrutiny carefully when applying this public safety rationale to ensure that the protections of the Fourth Amendment are not rendered meaningless. *Gonzales*, 36 Kan. App. 2d at 455. A three-part test helps to define the contours of a valid welfare check: First, an officer has the right to stop or investigate when there are objective, specific, and articulable facts to suspect that a person needs help or is in peril. Second, if the person needs help, the officer may take the appropriate steps to render assistance. And third, when the officer believes that the person is no longer in need of assistance, any further actions constitute a seizure. *State v. Ellis*, 311 Kan. 925, 929-30, 469 P.3d 65 (2020) (citing *Gonzales*, 36 Kan. App. 2d at 456).

Under the first part of the welfare check test, Officer Winslow's initial contact with Roth was plainly justified by safety reasons based on specific and articulable facts—the call by Sigler, a concerned citizen, to the police after seeing Roth apparently asleep in his automobile for two hours. Roth does not contest that Officer Winslow was rightfully dispatched to check on his wellbeing or the court's findings that Officer Winslow "would not have been doing his duty had he not checked to see if [Roth] was safe as far as from a health standpoint."

Turning to the second prong, whether Officer Winslow took appropriate action to render assistance, Roth contends that Officer Winslow did not make sufficient efforts at ascertaining his wellbeing. Upon our review, however, the evidence shows that Officer Winslow awakened Roth to check on his welfare and promptly noticed that Roth slurred his words and had difficulty communicating with the officer. This benign colloquy was consonant with a lawful encounter by the officer to ascertain Roth's wellbeing.

6

Regarding the third prong, if the officer believes that the person is no longer in need of assistance, any further actions constitute a seizure. Roth contends that Officer Winslow "was not justified in asking for identification in the complete absence of doing anything to check on [his] welfare." Moreover, Roth asserts that "at the point that Winslow asked for identification, he was conducting a criminal investigation without any reasonable suspicion of criminal activity. . . . It also changed what had ostensibly been a welfare check into a traffic stop, albeit an illegal traffic stop."

Roth's complaint is mistaken. Our Supreme Court has held that "a law enforcement officer's mere request for identification or identifying information generally will not constitute a seizure." *Ellis*, 311 Kan. at 930; see *State v. Pollman*, 286 Kan. 881, 888, 190 P.3d 234 (2008). Similarly, in this appeal, the mere fact that Officer Winslow asked to see Roth's driver's license did not constitute a seizure. And there is no evidence that Officer Winslow was unlawfully attempting to extend the welfare check beyond its permissible limits.

Roth also maintains the attempt to obtain his driver's license was a fishing expedition and unreasonably extended the welfare check. However, the voluntary encounter was not extended based on Officer Winslow's request for identification. Rather, the voluntary encounter transformed into a criminal investigation when Officer Winslow saw Roth drop the uncapped syringe filled with a substance while attempting to locate his driver's license. Based on Officer Winslow's training and experience, Roth's slurred speech and difficulty in communicating, coupled with his possession of the syringe clearly suggested the presence of both illicit drugs and drug paraphernalia. As a result, Officer Winslow's request for identification did not impermissibly extend the welfare check. Roth's unusual behavior and discovery of the syringe at the time Officer Winslow asked Roth for his driver's license transformed the welfare check into a criminal investigation.

In the district court's ruling, it found "the true custody or restraint occurred" when Officer Winslow asked Roth to get out of the car. This seizure occurred *after* Officer Winslow's observations of Roth's behavior and the presence of the uncapped and filled syringe. Accordingly, the next question for our consideration is whether detaining Roth, requesting a K-9 unit, and later searching the vehicle were statutorily and constitutionally permissible.

Law enforcement officers must have reasonable suspicion that an individual is committing, has committed, or is about to commit a crime in order to extend a welfare check and detain the person for further investigation. See *Ellis*, 311 Kan. at 931; *Pollman*, 286 Kan. at 889 ("[I]nvestigatory detentions are permitted under K.S.A. 22-2402 and the Fourth Amendment to the United States Constitution if an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime.") Reasonable suspicion is defined as a ""'minimum level of objective justification' which is 'considerably less than proof of wrongdoing by a preponderance of the evidence.'"" *Doelz*, 309 Kan. at 139. Whether reasonable suspicion exists is a question of law. *State v. Thomas*, 291 Kan. 676, 688, 246 P.3d 678 (2011).

The State argues, in part, that Officer Winslow was reasonably suspicious of criminal activity—specifically, that Roth may have been driving under the influence—based on Roth's "behavior, speech and disorientation." But the district court rejected this argument at the hearing on the motion to suppress, noting that Officer Winslow did not know for certain whether Roth had been driving his automobile.

Apart from Officer Winslow's testimony regarding Roth's apparent inebriation, the court found that the sight of the uncapped, filled needle provided reasonable suspicion to detain Roth and request a K-9 unit. According to the district court, the drug dog's alert then provided probable cause to conduct a warrantless search of the automobile. We agree. Our review of the record supports the district court's findings.

In conclusion, we find that Officer Winslow conducted a valid public safety welfare check. Shortly after waking and conversing with Roth, and upon asking him to provide his driver's license, the officer observed Roth drop an uncapped filled syringe inside the car. Under the circumstances, given the officer's training and experience with methamphetamine users, there were specific articulable facts warranting a brief investigatory detention. Lastly, the drug dog's detection of illegal substances in the automobile provided probable cause to search it without a warrant and recover the contraband. We hold the district court did not err in denying Roth's motion to suppress evidence.

Affirmed.