IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,797

STATE OF KANSAS,
*Appellee,*

v.

TYLER BRANDON MCDONALD,
*Appellant.*

SYLLABUS BY THE COURT

1.

The Fourth Amendment to the United States Constitution protects the right of an individual to be secure in his or her person and not subject to unreasonable searches and seizures by the government. Section 15 of the Kansas Constitution Bill of Rights offers the same protections.

2.

A public safety stop is a seizure and an exception to the Fourth Amendment warrant requirement.

3.

A warrantless traffic stop can be justified for public safety reasons if the safety reasons are based upon specific and articulable facts. Suspicion of criminal activity is not a legitimate basis for a public welfare stop. In this case, the facts are insufficient to allow a warrantless seizure and do not support a valid public safety stop.

Review of the judgment of the Court of Appeals in 63 Kan. App. 2d 75, 524 P.3d 448 (2023). Appeal from Geary District Court; CHARLES A. ZIMMERMAN, magistrate judge. Oral argument held

September 11, 2023. Opinion filed March 8, 2024. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.

*Kristen B. Patty*, of Wichita, argued the cause and was on the brief for appellant.

*Natalie Chalmers*, assistant solicitor general, argued the cause, and *Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: After dark on a late summer evening in Geary County, a sheriff's deputy initiated a public welfare stop of Tyler Brandon McDonald. The deputy was patrolling the Outlet Park area near Milford Lake when he observed McDonald's vehicle parked in a parking space near the entrance of the park. The deputy could see that McDonald was alone and alert in his vehicle. Relying on his prior knowledge of a murder-suicide in the area, the deputy decided to initiate a public welfare stop.

The deputy pulled in behind McDonald's vehicle, activated his rear emergency lights, and ran McDonald's license plate. As he was approaching McDonald's car, the deputy heard voices and believed McDonald was having a phone conversation via Bluetooth. When McDonald rolled down his window, the deputy smelled marijuana. The deputy asked for McDonald's license, called for backup, and initiated a search of McDonald's car, finding marijuana and a grinder.

McDonald filed a motion to suppress evidence obtained from the vehicle search, arguing that the public safety stop violated his Fourth Amendment rights. The district court denied his motion and convicted him for possession of marijuana and possession of drug paraphernalia. McDonald timely appealed and the Court of Appeals affirmed. *State v. McDonald*, 63 Kan. App. 2d 75, 524 P.3d 448 (2023). Because we hold this was an invalid public safety stop, we reverse.

"On a motion to suppress, an appellate court generally reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo." *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). When the material facts supporting a district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). The State has the burden to prove a search or seizure was legal. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016).

The Fourth Amendment to the United States Constitution protects the right of an individual to be secure in his or her person and not subject to unreasonable searches and seizures by the government. *State v. Ryce*, 303 Kan. 899, 909, 368 P.3d 342 (2016). Section 15 of the Kansas Constitution Bill of Rights offers the same protections. 303 Kan. at 909; *State v. Williams*, 297 Kan. 370, 376, 300 P.3d 1072 (2013).

There are generally four types of encounters between individuals and police: (1) voluntary or consensual encounters, (2) investigatory detentions, (3) public safety or public welfare stops, and (4) arrests. *State v. Guein*, 309 Kan. 1245, 1253, 444 P.3d 340 (2019). Here the parties both argue—and testimony confirms—that the deputy was attempting to execute a public safety stop. The deputy even testified that McDonald would only have been free to leave, *after* he finished the public safety stop.

As far as the Fourth Amendment is concerned, a public safety traffic stop is a seizure. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 636, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015). Any warrantless search or seizure is presumptively unreasonable unless it falls within a recognized exception to the warrant requirement. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Public safety or community caretaking reasons may

justify a warrantless seizure even when no civil or criminal infractions have occurred, so long as the encounter is based on specific and articulable facts. *Hanke*, 307 Kan. at 827-28.

The public safety exception was first discussed by the United States Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). *Cady* involved a warrantless search, not a seizure. But we have cited *Cady*'s underlying public safety rationale as persuasive in adopting the public safety exception to the Fourth Amendment warrant requirement in *State v. Vistuba*, 251 Kan. 821, 824, 840 P.2d 511 (1992), *disapproved on other grounds in State v. Field*, 252 Kan. 657, 847 P.2d 1280 (1993). In that case, we held that a warrantless traffic stop can be justified for public safety reasons "*if the safety reasons are based upon specific and articulable facts*." *Vistuba*, 251 Kan. at 824; see *State v. Ellis*, 311 Kan. 925, 929-30, 469 P.3d 65 (2020).

Instances of courts policing the limits on law enforcement's use of public welfare stops is nothing new. We have previously said "[d]espite repeated admonitions to the State that police may not use public welfare checks as a basis for conducting background investigations and warrant checks . . . such conduct persists." *Ellis*, 311 Kan. at 942; see also *State v. Gonzales*, 36 Kan. App. 2d 446, 453, 141 P.3d 501 (2006) ("Once safety stops are permitted, then there must be limits placed upon them; otherwise, any pretext could serve as a reason to stop."). A valid public-safety stop therefore requires an officer to believe such a stop is necessary to protect the individual or the public based on the specific and articulable facts of the particular situation. *Ellis*, 311 Kan. at 929-30. Several Kansas cases provide examples as to what can constitute sufficient specific and articulable facts.

In *Vistuba*, we recognized the legitimacy of a lawful public welfare stop when an officer pulled over a moving vehicle because the person was driving erratically, driving slowly, hugging the curb, swerving on the shoulder, and the officer had a reasonable

belief that the driver was either ill or falling asleep. 251 Kan. at 822, 824. The officer testified that while she believed the driver was not committing any crime, the driver was posing a danger to himself and others on the road. 251 Kan. at 822; see also *State v. Messner*, 55 Kan. App. 2d 630, 631-32, 634, 419 P.3d 642 (2018) (valid public welfare stop when defendant had spent eight hours incoherent in a grocery store and police followed and stopped him after he was asked to leave the store out of concern for his own safety); *State v. McKenna*, 57 Kan. App. 2d 731, 731-32, 740, 459 P.3d 1274 (2020) (valid public welfare stop when police viewed a driver slumped over and unresponsive in her car); *Nickelson v. Kansas Dept. of Revenue*, 33 Kan. App. 2d 359, 360, 365, 102 P.3d 490 (2004) (valid public safety stop when, pursuant to standard highway patrol procedures, officer observed defendant pull off the highway onto a secluded farm plug and turn off his lights); *State v. Tilson*, No. 108,253, 2013 WL 2920147, at *1, 3 (Kan. App. 2013) (unpublished opinion) (valid public welfare stop when police observed defendant walking in the street at 3:30 a.m. near his overturned car with scratches and blood on his hands and defendant's friend had reported he was likely a danger to himself).

In this case, however, the facts do not support a valid safety stop. The deputy stated he was concerned because it was dark, it was late, the car was parked in a "secluded" area, there was a single occupant inside the car, there had been prior safety incidents in the area in past years, people often do illegal activity in that area, and that he didn't know what McDonald was thinking. On examination, we find these facts insufficient to allow a warrantless seizure.

First, it was approximately 9 p.m., the park was still open to the public, and McDonald was legally parked near the entrance. None of these facts indicate something is wrong or that McDonald is in danger. Next, we assign no value to the bare fact McDonald was alone. Upon approaching the vehicle, the deputy could even hear what he believed was McDonald speaking on the phone. And the fact there had been past issues in

5

the park with criminal activity is irrelevant because the deputy admitted he did not suspect any criminal activity, and suspicion of criminal activity is not a legitimate basis for a public welfare stop.

Finally, turning to the deputy's concern based on his experiences working prior instances of self-harm, we find no specific and articulable facts in the record to support those concerns here. The deputy had not received any calls, reports, or other information that McDonald was in any type of danger. McDonald did not appear to be in an adverse physical state or doing anything which would indicate he was at any risk of self-harm. Sitting alone, talking on the phone via Bluetooth, while legally parked in an open public park is simply not enough. Moreover, the deputy not knowing what McDonald was thinking is not a specific and articulable fact giving rise to public safety concerns.

We hold the stop unconstitutional in violation of the Fourth Amendment. Accordingly, we reverse the lower courts and reverse McDonald's convictions.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed.